JOHN S. COVINGTON, Judge.
G.L. Creech, d/b/a Truck Services Hauling and Rentals (Creech), devolutively appealed the trial court’s judgment awarding plaintiff-appellee, C.R. Walker (Walker), $54,730.50 as damages for breach of contract.
This is the second time this case has come before us. On the first appeal, we reversed the trial court’s judgment that the written contracts between the parties were shams and unenforceable and remanded the matter to the trial court for the determination of damages. 460 So.2d 657 (La.App. 1st Cir.1984), writ denied, 464 So.2d 316 (La.1985).
PRIOR APPEAL
In the previous appeal we held that:
In the instant case, the parties entered into a valid written lease which fulfilled *169 the [Public Service] Commission’s regulations and was filed with the Commission as required. This is the agreement between Walker and Creech and any other agreement is irrelevant and contrary to the Commission’s rules and regulations. Public policy mandates that this agreement be enforced.
[[Image here]]
Under the terms of the written lease, compensation to Walker was to be “70% gross revenue.”
... No provisions of the lease provide that Creech was entitled to deduct an amount for the rental of the trailer [Creech owned] before computing Walker’s 70%. We find that “gross revenue” means the total revenue derived from each shipment and is not limited to revenues derived from the truck alone.... Therefore, Walker was entitled to 70% of the gross revenue per haul and not a lesser amount.
The only remaining issue to be decided is the amount of damages due Walker for the breach of the lease.
460 So.2d at 660. (Brackets and ellipsis supplied.)
In addressing the issue of damages in the prior appeal, we stated, in pertinent part, as follows:
Throughout the period that these leases were in effect, Walker relied on Creech to handle all billing and paperwork in regard to Walker’s trucks. Each week Creech would mail a listing known as a “settlement sheet” to Walker. These sheets contained a listing of the previous week’s activities which involved Walker’s trucks. Also included were listings of the invoice numbers for each haul, ... and 70% of that figure as compensation for Walker. After suit was filed, Walker’s office was burglarized and all settlement sheets for the period prior to August of 1979, amongst other things, were stolen.
At trial, in an attempt to establish the amount of underpayment by Creech, Walker introduced the settlement sheets for the period from August 1979 to February 1980. In addition, Walker introduced all of the freight bills issued by Creech to customers, including the bills which represented hauls not handled by Walker’s trucks. Based on this, John Sharkey, Walker’s stepson who helped Walker in his business, was able to compare the freight bills, which represented the actual gross revenues, with the amount on the settlement sheets, which Creech represented as gross revenues. This enabled Sharkey to establish the amount of underpayment for the period from August 1979 to February 1980.
However, for the period prior to August, 1979, no settlement sheets were available and the only evidence regarding the amount of underpayment was the testimony of Sharkey. Sharkey testified that he was able to compute an average amount of underpayment for the period from August 1979 to February 1980 by comparing the actual gross revenue in the freight bills to the amounts represented by Creech as gross revenue on the settlement sheets. Furthermore, by comparing the amounts charged for hauls made with Walker’s trucks with the total amount of freight bills issued by Creech to a particular customer, Shar-key was able to estimate the percentage of Creech’s business with that customer which was hauled by Walker’s trucks for the same period.
Based on testimony that the ratio between Creech’s business and the use of Walker’s trucks was the same for the period from January 1979 through July 1979 as it was from August 1979 to February 1980, Sharkey was able to apply his average and percentage to estimate the amount of underpayment for the period prior to August 1979.
Walker’s evidence regarding the amount of underpayment prior to August 1979 consists of the invoices issued by Creech to his customers, Sharkey’s testimony, and Sharkey's computations for one of several companies.... [W]hile Creech used Walker’s trucks to haul' freight for six customers, the record contains Sharkey’s computations regarding only one of these six customers. Other *170 than for the period after August 1979, the record is indeterminate and too speculative to enable us to calculate a proper award.
While we realize that the best evidence to establish the amount of underpayments is missing, we are unable to determine a certain amount of losses due Walker from the evidence in the record. Calculations and computations are an adequate method of establishing damages, but such calculations and computations must be precise, certain and supported by sound reasoning, and not speculative and unclear.
What is needed in this case are accurate computations to establish the amount which was due Walker and the amount which was paid by Creech. Any pertinent documented evidence should also be utilized to establish these amounts. In establishing these amounts, an accurate calculation of the amount of Creech’s business handled by Walker should be established. These computations should be done separately for each of the six customers, as the computations will vary. Additionally, these computations should be documented for the entire period, as well as accurately explained by testimony.
Because of the lack of an adequate explanation of what constitutes the amount retained by Creech, of which Walker should receive 70%, we will remand this case to the trial court for the taking of further evidence, as needed, in order to determine those figures.
460 So.2d at 660-661. (Brackets, emphasis and ellipsis are ours.)
TRIAL ON REMAND
Counsel for both Walker and Creech stipulated that the evidence introduced at the original trial, as it pertained to the determination of damages resulting from the breach of contract, would be a part of the case on remand.
Walker filed a pleading styled “pretrial memorandum upon remand for additional damage calculations,” to which he attached “damage calculations based on the evidence in the record.” John M. Sharkey and Creech testified at the July 30,1985 trial on remand. Mr. Sharkey, Walker’s stepson, served Walker in a number of capacities, including bookkeeper, driver and dispatcher.
Sharkey possessed firsthand knowledge of Walker’s business operations based on his four or five years of employment by Walker in a variety of capacities. He testified that he prepared the calculations which were attached to the pretrial memorandum. Sharkey’s testimony stated in great detail the documents he used and the method he employed in reaching his calculations for each of Creech’s shipping customers whose goods were hauled by Walker’s trucks and other trucks as well. For the period August, 1979 to February, 1980 Sharkey utilized the settlement sheets and freight bills sent to Walker by Creech and which were not taken in the burglary of Walker’s office after he sued Creech. Based on those data, Sharkey concluded that the amount which Creech underpaid totaled $33,793.57 for that period.
Settlement sheets were not available for the periods from July, 1978 through December, 1978 and from January, 1979 through July, 1979. However, freight bills were obtained by Sharkey and on the basis of that information and his knowledge that the Walker trucks were kept as busy during those two periods as they were during the period from August, 1979 to February, 1980, he calculated that the amount underpaid for services rendered to six of Creech’s customers totaled $20,776.97. The total underpaid from July, 1978 to February, 1980 totaled $54,730.50.
Sharkey testified candidly that for one or more of the periods of time he could not calculate any underpayment from one or more of the accounts because he had neither settlement sheets nor freight bills to examine.
WRITTEN REASONS FOR JUDGMENT ON REMAND
In written reasons signed and filed in the record on October 16, 1985, the trial court stated:
*171 The First Circuit found sufficient evidence in the record to establish damages for the period August, 1979 through February, 1980, but remanded the case for a determination of damages for the period prior to August, 1979.
Considering the evidence presented on remand, the Court finds that plaintiff has proven the extent of damages for the period prior to August, 1979 by a preponderance of the evidence.
ASSIGNMENTS OF ERROR
Creech assigns as error the trial court’s holding that plaintiff proved, by the required preponderance of the evidence, damages of $54,730.50. He also assigns as error this court’s reversal of the district court on the original appeal, holding the contracts between Walker and Creech were valid and enforceable, and remanding the case for determination of damages.
LAW OF THE CASE PRINCIPLE
Walker, appellee, argues in his brief in the instant appeal that:
At least 21 of 23 pages of appellant’s “original” brief in the instant appeal are a verbatim regurgitation of appellant’s brief in support of his unsuccessful Application for ... Writs ... and were filed here again with this Court ... via the magic of pressing a word processor button. Concommitantly, 3 of the 4 issues for review presented by appellant were also briefed, argued and decided by this Court on original appeal and were the further subject of his previous brief in support of his unsuccessful Application for Writs_ [Therefore ... the first 3 of the 4 alleged specifications of error in the present appeal have already been addressed by this Court and the Louisiana Supreme Court and thus represent “the law of the case.”
The late Justice Albert Tate, Jr., speaking for the Court in Day v. Campbell-Grosjean Roofing & Sheet Metal Corp., 260 La. 325, 256 So.2d 105 (1971), stated the “law of the case” principle as follows:
With regard to an appellate court, the “law of the case” refers to a policy by which the court mil not, on a subsequent appeal, reconsider prior rulings in the same case. This policy applies only against those who were parties to the case when the former appellate decision was rendered and who thus had their day in court. Among reasons assigned for application of the policy are: the avoidance of indefinite relitigation of the same issue; the desirability of consistency of the result in the same litigation; and the efficiency, and the essential fairness to both parties, of affording a single opportunity for the argument and decision of the matter at issue.
256 So.2d at 107. (Emphasis and parenthesis supplied.) ACCORD: Petition of Sewerage & Water Board of New Orleans, 278 So.2d 81, 83 (La.1973).
We will not review anew the issue of the enforceability of the contracts, decided in the original appeal, in this present appeal. Appellant’s first three assignments of error are without merit.
DETERMINATION OF DAMAGES
Appellant Creech argues that the trial court, on remand, awarded, under the constraints placed by this court’s initial appellate decision herein, a judgment in favor of plaintiff and against defendant in the amount of $54,730.50 but did so without any particular findings of fact. Further, appellant argues that Walker failed to meet any reasonable burden of proof in showing actual damages. Appellant devotes a total of forty-four lines in his brief to point out the alleged weaknesses in Walker’s proof.
Appellee cites Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976) for the applicable standard of review of trial court damage awards. In Coco, the Supreme Court quoted approvingly from Bitoun v. Landry, 302 So.2d 278, 279 (La.1974), concerning the review of damages, in pertinent part, as follows:
Unless the record demonstrates that the trial court abused the “much discretion” provided for in fixing damages (C.C.1934) [present La.C.C. art. 1999], the *172 appellate court should not disturb the award.... The question is not whether a different award might have been more appropriate, but whether the award of the trial court can be reasonably supported by the evidence and justifiable inferences from the evidence before it. That such evidence might also support a greater (or smaller) award will not justify a change in the amount by the appellate court.
341 So.2d 332, 334. (Brackets and emphasis are ours.)
Appellee Walker correctly observes in his brief that Creech did not offer in evidence “a single piece of contrary evidence” and “appellee’s damage calculations were thus introduced uncontradicted.”
Our detailed analysis of the record of this case convinces us that the trial court decided the case on the basis of evidence in the record and justifiable inferences from that evidence. Thus, there was no abuse of discretion by the trial court in fixing the damages based on Sharkey’s calculations, explanatory testimony, and documentary evidence. Appellant’s fourth assignment of error is without merit.
FRIVOLOUS APPEAL
Walker asserts in his brief that he is entitled to an award of damages based on Creech’s appeal which Walker asserts “was filed for no other purpose than delay” and, as such, is frivolous. La.C.C.P. art. 2164 authorizes an appellate court to award damages for frivolous appeal. So does Rule 2-19 of the Uniform Rules-Courts of Appeal, which adds the qualifier, “as provided by law.” La.C.C.P. art. 2133 states that an appellee “shall not be obliged to answer the appeal unless ... he demands damages against the appellant.”
In the instant appeal, Walker did not answer Creech’s appeal. The first mention of damages for frivolous appeal is in his brief filed with this court. We cannot award damages for frivolous appeal because the request therefor was not made in the method or time required by our procedural law. Under the circumstances presented we express no opinion concerning the merits of appellee’s claim for damages.
Accordingly, the judgment of the trial court is affirmed. All costs of this litigation, including this appeal, are assessed against defendant-appellant, G.L. Creech, d/b/a Truck Services Hauling & Rentals. La.C.C.P. art. 2164.
AFFIRMED.