714 So.2d 7 (1998)
Don L. SCOTT, Plaintiff-Appellant,
v.
Michiel H. SMITH, et al., Defendants-Appellees.
No. 30330-CA.
Court of Appeal of Louisiana, Second Circuit.
April 8, 1998.
*8 Paul H. Kidd, Monroe, for Appellant.
Cook, Yancey, King & Galloway by Brian A. Homza, Shreveport, for Appellees.
Before MARVIN, C.J., and STEWART and GASKINS, JJ.
GASKINS, Judge.
This tort suit arises from an auto accident in which the plaintiff, Don L. Scott, was injured while traveling back to his employer's workshop from a job site as a passenger in a truck owned by his employer and driven by a co-worker. The plaintiff appeals from a summary judgment in favor of the defendants which found that the employer was entitled to tort immunity and the plaintiff's sole remedy was in worker's compensation. We affirm.

FACTS
Mr. Scott was employed by Davison Terminal Services, Inc., d/b/a Dixie Hydro Vac Specialists, which provided high pressure tank cleaning for industrial purposes. On July 9,1991, Mr. Scott and two co-employees, Michiel Smith and LeRoy Ewing Jr., worked a job at the Atlas Refinery in Shreveport. That morning, Mr. Scott, who lived in Bastrop, drove his personal vehicle to West Monroe, where he met the other employees at their employer's workshop for the trip to the Atlas plant. They traveled in a two-ton truck owned by Davison Terminal Services, Inc., and driven by Mr. Smith, the crew leader on the day in question; the truck carried special equipment necessary for their work. After completing the job, they began the trip back to West Monroe, where they were to "unprep" the truck upon their arrival at the employer's workshop. While traveling on I-20 in Lincoln Parish, they were involved in a one-vehicle accident. Mr. Scott was seriously injured.
In February 1992, Mr. Scott filed suit against Mr. Smith, Davison Terminal Services, Inc., and Davison's auto liability insurer, Commercial Union Insurance Company. In September 1992, the defendants filed their first motion for summary judgment, asserting that Mr. Scott's only remedy was in *9 worker's compensation. The motion was supported by affidavits from two supervisors which stated that it was normal practice for employees to be paid reasonable travel time for traveling to and from a job site. Additionally, depositions of several supervisors and co-employees were filed. Mr. Scott opposed the motion, filing his own affidavit which asserted that his injuries did not arise in the course and scope of his employment and that he did not receive compensation for travel time to and from the Atlas job. He also contended that Dixie and Davison were separate entities and that he never worked for Davison. (However, he admitted that his payroll checks bore Davison's name.) In opposition to the motion, the plaintiff also filed an affidavit by John Edward Rogers Sr., who purported to be a former Dixie maintenance supervisor and stated that Dixie never paid travel time from a job site. In December 1992, the first motion for summary judgment was denied on the basis that there were disputed issues of fact.
In August 1995, a second motion for summary judgment was filed by the defendants. In support of it, they filed several affidavits and depositions, as well as a copy of the plaintiff's worker's compensation claim. In opposition to the second motion for summary judgment, the plaintiff filed several documents, including a new affidavit by him.
The plaintiff also filed supplemental and amending petitions in which he asserted that, if the court found his injuries arose in the course and scope of his employment, his employer was still liable for "intentional acts" because it allegedly knew that the vehicle was inherently dangerous and the driver was unsafe. In his second supplemental and amending petition, the plaintiff also added "Dixie Hydro-Vac Specialists, Inc." as a defendant, as well as Insurance Company of North America (INA), Davison's worker's compensation insurer, which had previously intervened in the suit.
In response to the addition of "Dixie Hydro-Vac Specialists, Inc." as a party, Davison filed exceptions asserting that no such corporate entity existed. In support of this position, Davison relied upon affidavits from Rodney Plummer, the corporate secretary of Davison, and Greg Gossler, Davison's safety director, to the effect that Dixie was not a separate corporate entity and that any notation as such on any documents was clerical error. Also submitted was a certificate from the Louisiana Secretary of State attesting to the non-existence of any such corporation in this state.[1]
In February 1996, the plaintiff dismissed with prejudice all claims against INA, which, in turn, dismissed its petition of intervention. The plaintiff also dismissed with prejudice all claims against the remaining defendants except those arising out of the alleged negligence of Mr. Smith in driving the truck; in so doing, the plaintiff dismissed his claims of intentional acts. In March 1996, the defendants re-urged their second motion for summary judgment on the basis that the plaintiff's remaining claims were barred by the exclusive remedy of worker's compensation.
In February 1997, the trial court granted summary judgment in favor of the defendants. In a written opinion, the court found that Dixie Hydro Vac Specialists was part of and owned by Davison Terminal Service, Inc. In support of this finding, the court relied upon the affidavits of Mr. Plummer and Mr. Gossler and the Secretary of State's certification, as well as the plaintiff's own admissions in his deposition that he was employed by Davison and received paychecks drawn on Davison's account. (The court also observed the plaintiff's failure to file counter affidavits on this specific issue.)
As to the question of whether the accident occurred in the course and scope of the plaintiff's employment, the trial court noted that there was conflict as to whether the plaintiff was actually paid for travel time back to the employer's workshop. However, the court found that paymentor nonpaymentfor this travel time was not dispositive of the course and scope requirement. The court *10 referred to the plaintiff's deposition testimony that he would be under Mr. Smith's supervision following their return to the employer's place of business. The trial court concluded that, since the plaintiff was traveling in a company-furnished vehicle and his presence in the truck was pursuant to the employer's order and in the interest of the employer's business, he was in the course and scope of his employment when injured.
The plaintiff appealed.

LAW

Summary judgment
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La. 1991); Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730.
Summary judgments are governed by La. C.C.P. art. 966, which was amended in both the 1996 and 1997 legislative sessions. See Acts 1996, 1st Ex.Sess., No. 9, and Acts 1997, No. 483. The effect of these amendments is to establish that summary judgment is now favored. Indeed, the summary judgment procedure is today designed to secure the just, speedy, and inexpensive determination of every action allowed by law. La.C.C.P. art. 966A(2); NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,555 (La.App.2d Cir. 8/21/96), 679 So.2d 477. Since the amended versions of the article are procedural in nature, they are subject to retroactive application. Curtis v. Curtis, 28,-698 (La.App.2d Cir. 9/25/96), 680 So.2d 1327; Short v. Giffin, 96-0361 (La.App. 4th Cir. 8/21/96), 682 So.2d 249, writ denied, 96-3063 (La.3/7/97), 689 So.2d 1372.
And, as consistently noted in La.C.C.P. art. 967, once the mover has established there are no genuine issues of material fact, the burden shifts to the opponent. The opposing party cannot rest on the mere allegations or denials of his pleadings, but must present evidence establishing that material facts are still at issue. Bockman v. Caraway, 29,436 (La.App.2d Cir. 4/2/97), 691 So.2d 815.

Tort immunity
The employer is responsible for compensation benefits to an employee who is injured by an accident which occurs in the course of the employment and arises out of the employment. La. R.S. 23:1031. Generally, compensation benefits are the employee's exclusive remedy against his employer for such an injury. La.R.S. 23:1032. An exception to this rule provides that nothing therein shall affect the liability of the employer, principal, officer, or co-employee resulting from an "intentional act." La.R.S. 23:1032(B). When the employer seeks to avail itself of tort immunity under Section 1032, the employer has the burden of proving entitlement to immunity. Mundy v. Department of Health and Human Resources, 593 So.2d 346 (La.1992).
An accident occurs in the course of employment when the employee sustains an injury while actively engaged in the performance of his duties during working hours, either on the employer's premises or at other places where employment activities take the employee. Kern v. Southport Mill, 174 La. 432, 141 So. 19 (1932); Mundy, supra. The determination of whether an accident arises out of employment focuses on the character or source of the risk which gives rise to the injury and on the relationship of the risk to the nature of the employment. An accident arises out of employment if the risk from which the injury resulted was greater for the employee than for a person not engaged in the employment. Mundy, supra. Moreover, an accident has also been held to arise out of employment if the conditions or obligations of the employment caused the employee in the course of employment to be at the place of the accident at the time the accident occurred. Kern, supra. Thus, when the employee is squarely within the course of his employment, virtually any risk (whether an increased risk or not) has been considered as arising out of employment. Mundy, supra.
The Louisiana Supreme Court has declined to view the "course of employment" and "arising out of employment" requirements as *11 separate and unrelated concepts. Rather, the court has recognized the mutual interdependence of the two concepts in determining the relationship of the injury to the employment. In a close case, a strong showing of "course of employment" has been held to counterbalance a relatively weak showing of "arising out of employment." Mundy, supra.
Regarding the "course of employment" inquiry, the time, place and employment activity at the time of the accident must be considered. For employees who are paid for travel time to and from the work site, the daily employer/employee relationship does not terminate until employees have reached their destination after the end of a workday. Until they reach their destination, the employees are considered to be actively engaged in the employer's business. Keith v. Gelco Corporation, 30,022 (La.App.2d Cir. 12/10/97), 705 So.2d 244.
As a general rule, an accident which occurs while an employee is traveling to and from work is not considered as having occurred during the course and scope of employment. Mundy, supra; Tucker v. Northeast Louisiana Tree Service, 27,768 (La. App.2d Cir. 12/6/95), 665 So.2d 672, writ denied, 96-0063 (La.3/8/96), 669 So.2d 404, writ not considered, 96-0100 (La.3/8/96), 669 So.2d 404; Keith, supra. However, there are instances where exceptions to this rule have been recognized. One exception to the rule occurs when the employer has furnished transportation as an incident to the employment agreement, either through a vehicle or payment of expenses, or where wages are paid for the time spent in traveling. Tucker, supra; Keith, supra.

CORPORATE ENTITY
The first issue we must resolve concerns the status of Dixie Hydro Vac Specialists. The plaintiff asserts that the trial court erred in finding that it was not a separate corporate entity from Davison Terminal Services, Inc. After careful review of the relevant affidavits, we find that the trial court was correct in its conclusion. The uncontradicted information brought forth by the defendants demonstrates that the original corporation was Pickett-Davison Fuel Service, Inc., which subsequently changed its name to Davison Terminal Services, Inc. This corporation began providing industrial cleaning services under the operating name of Dixie Hydro Vac Specialists. The plaintiff was employed by Davison Terminal Services, Inc., and his paycheck bore the name of Davison Terminal Services, Inc. The evidence in the record plainly establishes that Dixie Hydro Vac Specialists is not a corporation nor is it a separate entity from Davison Terminal Services, Inc.

DISCUSSION
The ultimate issue here is whether the plaintiff was injured in the course and scope of his employment. If the answer to this question is in the affirmative, his employer is entitled to tort immunity and the plaintiff's exclusive remedy is in worker's compensation. Based upon our review of the affidavits and depositions supporting and opposing the motion for summary judgment, we find that the plaintiff was in the course and scope of his employment at the time of the auto accident.

Payment for travel time
At first glance, the evidence as to whether or not the plaintiff was paid for travel time back to the employer's workplace on the day he was injured appears to be in considerable dispute. Although the plaintiff specifically denied receiving payment for travel time to and from the job site on the day of the accident in his first affidavit opposing summary judgment, he makes no such statement in his second affidavit.[2] Further, in his subsequent deposition, he conceded that he was unable to dispute what was shown on the employer's time records. The time records showed that the plaintiff was paid until 7:00 p.m. on the day of the accident; the wreck occurred at about 6:15 p.m. This payment of *12 travel time to the plaintiff was corroborated by the affidavits of Mr. Plummer, Davison's secretary, and John W. Dean, a CPA hired to review Davison's employment records. Further substantiation is found in the depositions of supervisor/manager Dwight Viereck, supervisor Charles Marsh, and co-worker Michiel Smith, all of whom testified that employees were paid for travel time to and from job sites.
The only testimony tending to support the plaintiff's initial position was that of former employee John Edward Rogers Sr. In his affidavit, Mr. Rogers initially asserted that Dixie did not pay its employees travel time to job sites unless the distance to the site was at least 250 miles and that it never paid its employees travel time from the job site to its operations office. Then he stated that "[t]ravel time to the job site would only be paid to the employee" if the mileage to the job site was 250 miles or more or if the travel was between Dixie branches. However, in his subsequent deposition, it became readily apparent that his affidavit contained numerous errors, including his position with Dixie and his date of termination. In particular, it was established during the deposition that Mr. Rogers' affidavit should have read that "[t]ravel time to and from the job site would only be paid to the employee" if the mileage was 250 miles or more or if the travel was between Dixie branches. Also, in his deposition, he admitted that since he left Dixie's employment in February 1990, he had no knowledge as to its payroll policies at the time of the plaintiff's accident in July 1991.
Given the fact that the opposing affidavits have been demonstrated to be of no substantive value by the subsequent depositions of the affiants, we find that they fail to establish a genuine issue of fact as to payment for travel time. However, even assuming arguendo that they established such a disputed issue of fact, we do not find it to be a material fact in this case. See and compare Keith, supra, in which this court found, in a similar case, that a genuine issue of fact as to payment for travel time did not end our inquiry as to the appropriateness of summary judgment.

Course and scope of employment
We are impressed by the strength of the "course of employment" showing in the instant case. The plaintiff was traveling in a company vehicle driven by a co-worker. The transportation was not provided as a mere gratuity. At the time of the accident, the plaintiff was still under the supervision and control of his employer. By his own admission, upon their return to the workshop, he would be obliged to "unprep" the truck when instructed to do so by Mr. Smith, the crew leader on this particular assignment. Thus, there is a strong "course of employment" showing.
Contrary to the assertions of the plaintiff, this is not a "returning from work" situation nor is it analogous to same. Rather the plaintiff was still in an employment-related situation where he would be required to perform more work-related tasks upon his return to the employer's workshop. He was required to travel to and from job sites by the necessities of his employer's business, and this travel was in furtherance of his employer's business interest.
Based on the foregoing, we find that the evidence in support of summary judgment amply establishes that the plaintiff was in the course and scope of his employment at the time he was injured. Summary judgment is not precluded by the issue of whether the plaintiff was paid for travel time.

CONCLUSION
We affirm the granting of summary judgment in favor of the defendants. Costs are assessed against the plaintiff-appellant.
AFFIRMED.
NOTES
[1] In December 1995, Commercial Union Insurance Company filed suit in federal court seeking a declaratory judgment that there was no corporation styled "Dixie Hydro-Vac Specialists, Inc." In April 1996, the federal action was dismissed due to the pendency of the instant state court action.
[2] While the second affidavit contains some general statements as to travel time in relation to bids, this information does not appear to be based on the affiant's personal knowledge as required by La. C.C.P. art. 967.